IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KIMBERLY ALLEN, | ) CASE NO. 1:15 CV 2672 |
| Plaintiff, | ) |
| | ) MAGISTRATE JUDGE |
| v. | ) WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL SECURITY, | ) |
| | ) **MEMORANDUM OPINION AND** |
| | ) **ORDER** |
| Defendant. | ) |

## Introduction

Before me[1] is an action by Kimberly Michelle Allen under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security denying her application for supplemental security income.[2] The Commissioner has answered[3] and filed the transcript of the administrative record.[4] Under the initial order,[5] the parties have briefed their positions.[6] They have participated in a telephonic oral argument.[7]

---

[1] ECF # 19. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 10.

[4] ECF # 11.

[5] ECF # 5.

[6] ECF # 17 (Commissioner's brief); ECF # 14 (Allen's brief).

[7] ECF # 23.

**Facts**

**A.     Background facts and decision of the Administrative Law Judge ("ALJ")**

Allen who was thirty-six years old at the time of the administrative hearing,[8] graduated from high school[9] and lives with her two children.[10] She was previously employed as a day care worker.[11]

The ALJ, whose decision became the final decision of the Commissioner, found that Allen had the following severe impairments: systemic lupus erythematosus with discoid and musculoskeletal manifestations (20 CFR 416.920(c).[12]

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Allen's residual functional capacity ("RFC"):

> The claimant has the residual functional capacity to perform the full range of light work as defined in 20 CFR 416.967(b). Particularly, the claimant can lift and carry a maximum of 20 pounds occasionally and 10 pounds frequently. She can stand and walk for 6 of 8 hours per workday and can sit for 6 of 8 hours per workday. She can push and pull with all extremities without limitation, except as frequency and weight restricted in her capacity to lift and carry.[13]

---

[8] ECF #11, Transcript ("Tr.") at 42.

[9] *Id*. at 43.

[10] *Id*. at 45.

[11] *Id*. at 44.

[12] *Id*. at 16.

[13] *Id.* at 19.

The claimant's only work activity prior to her application has been her work as a day care worker.[14] Her official earnings from 1998-2012 fall well short of the established regulatory thresholds of SGA.[15] With that requirement not met, the claimant's previous jobs fail to qualify as "past relevant work" within the meaning of Social Security regulations.

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Allen could perform.[16] The ALJ, therefore, found Allen not under a disability.

## B.     Issues on judicial review

Allen asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Allen presents the following issue for judicial review:

- Whether the Commissioner's decision is supported by substantial evidence when the evidence demonstrates that Ms. Allen's systemic lupus erythematosus meets the requirements of a listed impairment in Appendix I of the regulations.

For the reasons that follow, I will conclude that the ALJ's finding of no disability is supported by substantial evidence and, therefore, must be affirmed.

---

[14] *Id*. at 44.

[15] *Id.* at 150.

[16] *Id*. at 24.

## Analysis

**A.     Standard of review**

*1.     Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence. Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "
>
> The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[17]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner

---

[17] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

survives "a directed verdict" and wins.[18] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[19]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**B.     Application of standard**

This case presents the narrow question of whether the ALJ erred at Step Three in finding that Allen did not meet Listing 14.02 for lupus.[20] In that regard, the question on judicial review is even more tightly focused in that the ALJ acknowledged that Allen met some of the requirements set out in the listing.[21]

The listing itself is straightforward:

14.02 *Systematic lupus erythematosis*. As described in 14.00(D)(1). With:

    A.    Involvement of two or more organs/body systems, with:

        1.    One of the organs/body systems involved to at least a moderate level of severity; and

        2.    At least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss).[22]

---

[18] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06CV403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[19] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

[20] ECF # 14 at 1.

[21] ECF # 17 at 7 (citing transcript).

[22] ECF # 17 at 6.

20 C.F.R Pt. 404, Subpt.P, App.I, § 14.02.

In addressing that listing, the ALJ first found that Allen's lupus resulted in the involvement of at least two organs/body systems, specifically discoid and musculoskeletal manifestations.[23] As the Commissioner points out, the ALJ's finding on this point was within the context of finding at Step Two that Allen's lupus was a "severe" impairment, thus satisfying the requirement of the listing that at least one of the involved organs/body systems be involved to at least a moderate level of severity.[24]

As the Commissioner further observes, "this case turns on whether the ALJ reasonably found that [Allen] did not exhibit at least two of the constitutional symptoms or signs"[25] identified in the listing's second test: "*i.e.*, severe fatigue, fever, malaise, or involuntary weight loss, repeated manifestations of systemic vasculitis, or repeated manifestations of the disease with marked limitation in either activities of daily living, social functioning, or concentration, persistence or pace."[26] To that end, the ALJ stated:

> Rather, the treatment record, as summarized below, documents that, with medication compliance, her lupus condition is generally controlled. At the June 24, 2014 hearing, she reported that she weighed 111 pounds and had been at that weight for the past year, and, as summarized below, examination findings revealed, at most, a 14 pound weight fluctuation over a period of three years. The record does not document persistent or significant fevers. There is no documentation of significant, persistent malaise and, though there have

---

[23] Tr. at 16.

[24] ECF # 17 at 7.

[25] *Id*.

[26] Tr. at 18.

-6-

been reports of fatigue, it has not been significant enough for any treating physician of record to find it disabling. There is no documentation of vasculitis. As summarized above, the claimants activities of living, social functioning, and concentration, persistence, and pace are certainly not markedly limited. Examination findings do not document consistent or persistent complaints or findings of pain and numbness.[27]

Allen contends that the ALJ erred in concluding that she did not suffer from any of the "constitutional symptoms or signs" set out in the second test.[28] In particular she argues that her fourteen pound weight fluctuation over three years was significant, in that it was at least a ten percent decrease from her baseline weight[29] - 123 pounds in June 2012 fell to 109 pounds in July 2013.[30] She also maintains that the ALJ missed the fact that she suffers from malaise, instead improperly ruling that there was no diagnoses involving that term when, in fact, "malaise is a constellation of symptoms" which encompasses such things as fatigue, nausea, headaches and "confused thinking."[31]

Both malaise and fatigue are defined in the listings, with fatigue being defined, *inter alia*, as a sense of exhaustion "that results in significantly reduced physical activity or mental

---

[27] *Id*. at 18-19.

[28] ECF # 14 at 10.

[29] *Id*.

[30] *Id*. at 9.

[31] *Id*. at 10-11.

functions," while malaise is frequent feelings of illness, bodily discomfort, or lack of well being" that also results in a significant reduction in physical activity or mental function.[32]

Measured against that standard, the ALJ specifically found that "though there have been reports of fatigue, it has not been disabling enough for any treating physician to find it disabling."[33] Indeed, a 2013 functional opinion by Dr. Linda LeMaster, M.D., a treating source,[34] stated that Allen reported symptoms of pain, fatigue and daily morning stiffness, but concluded that these symptoms would not preclude her from sitting for eight hours with periodic breaks, nor standing/walking for two hours in an eight hour day.[35] A later, more recent opinion from this same source -one which was given "great weight, but not controlling weight" - was that although Allen experienced morning stiffness and pain in her hands and feet, "she could work if she had a morning break, a lunch break, and afternoon break."[36]

As such, substantial evidence supports the finding that although Allen has experienced some fatigue during the relevant period, the opinion of acceptable medical sources documented that any such fatigue did not result in any significant reduction in physical or mental capacities.

---

[32] ECF # 17 at 8 (citing regulation). Allen argues that the symptoms of fatigue and malaise "somewhat overlap". *Id*. at 9-16.

[33] Tr. at 19.

[34] *See*, tr. at 22.

[35] *Id*. at 315.

[36] *Id*. at 22 (citing record).

As to Allen's weight, the record does demonstrate a period of weight loss, which the ALJ addressed at several places.[37] In the most detailed review, the ALJ noted that from June 2011 to June 2012 she consistently weighed 123 pounds, and even reported in April that she had "no history or current problem" with weight loss.[38] There was weight loss during the period February 2013 to July 2013, but at the hearing [June 24, 2014] Allen weighed 111 pounds and stated that she "had been at the weight for the past year"- a situation the ALJ found to be reflective of "much improvement with medications."[39] The ALJ found Allen's testimony as to weight loss to be "inconsistent and evasive,"[40] even observing at another place in the opinion that she had "erroneously and variously reported that she had lost 15 pounds in the past six months and 25 pound in the past year."[41]

Thus, as with the argument concerning fatigue or malaise, there is substantial evidence in the record to support the finding that, except for a six-month period in 2013, Allen's weight has been consistent through long periods of time, lasting up to a year.

---

[37] The Commissioner argues that even if qualifying weight loss existed, the listing requirements are mot met. ECF # 17, at 7-8.

[38] *Id*. (citing record).

[39] *Id*. at 23.

[40] *Id.*

[41] *Id*. at 22.

Finally, and perhaps most importantly, the ALJ gave "great weight" to the opinions of two state agency reviewing physicians[42] who concluded that Allen did not meet or equal any listing.[43] It is well-settled that ALJs may rely upon the findings of state agency reviewing physicians in this regard under the facts of the present case.[44]

## Conclusion

Accordingly, and for the reasons stated, I find that the decision of the Commissioner to deny benefits to Kimberly Michelle Allen is supported by substantial evidence, and the same is hereby affirmed.

IT IS SO ORDERED.

Dated: February 8, 2017                                  s/ William H. Baughman, Jr.
                                                         United States Magistrate Judge

---

[42] *Id*. at 21.

[43] *Id*. at 18.

[44] *See, Johnson v. Commissioner,* No. 13-11658, 2014 WL 4798963, at ** 7-8 (S.D. Mich. Sept. 26, 2014)(citations omitted).